Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/12/2016 08:24 AM CST

Bryan M., appellant, v. Anne B., appellee,
and Adam B., intervenor-appellee.

___ N.W.2d ___

Filed February 12, 2016.    No. S-15-075.

1. **Estoppel: Equity: Appeal and Error.** A claim of equitable estoppel
   rests in equity, and in an appeal of an equity action, an appellate court
   tries factual questions de novo on the record and reaches a conclusion
   independent of the findings of the trial court.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a ques-
   tion of law, which an appellate court reviews independently of the lower
   court's determination.
3. **Constitutional Law: Statutes: Appeal and Error.** The constitutional-
   ity of a statute is a question of law which the Nebraska Supreme Court
   reviews independently of the lower court's determination.
4. **Paternity: Statutes.** An action to establish paternity is statutory in
   nature, and the authority for such action must be found in the statute and
   must be in accordance with the provisions thereof.
5. **Paternity: Guardians and Conservators: Words and Phrases.** In the
   context of a paternity action, a next friend is one who, in the absence of
   a guardian, acts for the benefit of an infant or minor child.
6. **Guardians and Conservators.** It is generally recognized that a next
   friend must have a significant relationship with the real party in interest,
   such that the next friend is an appropriate alter ego for the party who is
   not able to litigate in his or her own right.
7. **Estoppel: Words and Phrases.** Equitable estoppel is a bar which
   precludes a party from denying or asserting anything to the contrary
   of those matters established as the truth by his or her own deeds, acts,
   or representations.
8. **Estoppel: Fraud: Limitations of Actions.** The equitable doctrine of
   estoppel in pais may, in a proper case, be applied to prevent a fraudulent
   or inequitable resort to a statute of limitations, and a defendant may, by
   his or her representations, promises, or conduct, be so estopped where
   the other elements of estoppel are present.

9. ____: ____: ____. Equitable estoppel is not limited to circumstances of fraud but may also be applied to prevent an inequitable resort to a statute of limitations where the other elements of estoppel are present.

10. **Estoppel: Fraud.** The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

11. **Words and Phrases.** Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have.

12. **Estoppel.** Only reasonably justified reliance will create an estoppel.

13. **Fraud.** An essential element of actionable false representation is justifiable reliance on the representation.

14. **Constitutional Law: Proof.** The burden of demonstrating a constitutional defect rests with the challenger.

15. **Equal Protection.** The dissimilar treatment of dissimilarly situated persons does not violate equal protection rights.

16. ____. Under principles of equal protection, the government may not subject men and women to disparate treatment when there is no substantial relation between the disparity and an important state interest.

17. ____. The initial inquiry in an equal protection analysis focuses on whether the challenger is similarly situated to another group for the purpose of the challenged governmental action.

18. **Standing: Words and Phrases.** Standing is the legal or equitable right, title, or interest in the subject matter of a controversy.

19. **Standing: Jurisdiction: Appeal and Error.** If the party appealing an issue lacks standing, the court is without jurisdiction to decide the issues in the case.

20. **Due Process.** Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.

21. **Due Process: Notice.** Due process does not guarantee an individual any particular form of state procedure; instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to

be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.

22. **Constitutional Law: Due Process.** The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

Appeal from the District Court for Cass County: David K. Arterburn, Judge. Affirmed.

John A. Kinney and Jill M. Mason, of Kinney Law, P.C., L.L.O., for appellant.

Adam E. Astley, of Slowiaczek, Albers & Astley, P.C., L.L.O., for appellee.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for intervenor-appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Wright, J.

## I. NATURE OF CASE

This is an appeal from the dismissal of a paternity action pursuant to Neb. Rev. Stat. § 43-1411 (Reissue 2008). The biological father brought a paternity action on behalf of himself and as the "next friend" of the minor child. He sought a declaration of paternity and custody of the child, who was born 8 years before the action was filed. He claimed that the statute of limitations barring paternity actions after 4 years should be tolled by the doctrines of fraud and equitable estoppel based on misrepresentations of the mother that he was not the father. He asserts that our holding in *Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751 (1984), permits him to bring the action as the next friend of the child. And he claims that § 43-1411 is unconstitutional under the Due Process and Equal Protection Clauses of the state and federal Constitutions.

For the reasons stated below, we affirm the order of the district court.

## II. SCOPE OF REVIEW

[1-3] A claim of equitable estoppel rests in equity, and in an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Olsen v. Olsen*, 265 Neb. 299, 657 N.W.2d 1 (2003). Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015). The constitutionality of a statute is a question of law which we review independently of the lower court's determination. See *Big John's Billiards v. State*, 288 Neb. 938, 852 N.W.2d 727 (2014).

## III. FACTS

Appellee, Anne B., and intervenor, Adam B., have been married since May 1999. During the first 5 years of their marriage, Anne and Adam unsuccessfully attempted to conceive a child. Appellant, Bryan M., has been married to his wife for more than 25 years, and they have two children.

In the fall of 2003 until spring 2004, Anne and Bryan engaged in an extramarital affair in which they regularly engaged in sexual intercourse without contraception. During the affair, Anne continued to have regular sexual intercourse with both Bryan and her husband without using contraception. When Anne became pregnant, she broke off her relationship with Bryan. Bryan inquired several times whether he was the father of the child and was told that he was not. After the child, T.B., was born in 2004, Bryan again asked Anne whether he was the biological father. Again, he was told that he was not the father. Since T.B.'s birth in 2004, Adam has raised T.B. with the belief that he is T.B.'s father. Adam has served as T.B.'s father for T.B.'s entire life. Since T.B.'s birth, Bryan's contact with Anne and T.B. has been limited to occasional, unplanned meetings.

In 2012, Anne and Bryan resumed their extramarital affair. When the relationship resumed, Bryan requested a DNA

test to determine whether he is T.B.'s biological father. A DNA test performed at an Omaha, Nebraska, medical center revealed a 99.9-percent chance that Bryan is T.B.'s biological father.

Bryan filed his initial complaint on September 17, 2013, seeking to establish paternity of T.B. and custody. His second amended complaint, as stated by the district court, asserted the following:

> 1. [Bryan] is bringing this action in his own capacity, and Nebraska's four-year Statute of Limitations [provided in § 43-1411] is unconstitutional;
>
> 2. [Bryan] is bringing this action in his own capacity, and the Statute of Limitations should be tolled [based on fraud/deception]; and
>
> 3. [Bryan] is bringing this action both in his individual capacity and "as someone informally acting in the best interest of T.B., but not formally his guardian." The action is also captioned "Bryan . . . , on behalf of himself and as 'next friend' of T.B.["]

Bryan argued that the 4-year statute of limitations should be tolled because Anne told him that he was not the biological father.

The district court rejected Bryan's argument and found that the statute of limitations under § 43-1411 should not be tolled. The court found that Bryan had not been "deceived or hoodwinked into inactivity" by Anne, but simply failed to exercise his rights with due diligence. It found that Bryan originally did not want to be a parent to T.B., because he wanted to preserve his own marriage, and that he knew or should have known that it was impossible for Anne to know with certainty that he was not the father. It also granted Anne's motion to strike Bryan's claims brought as "the next friend" of T.B., because it was not alleged or shown that T.B. was without a guardian, since T.B. was currently living with his biological mother.

On Bryan's and Anne's renewed motions for partial summary judgment, the court found that § 43-1411 did not violate the

Due Process Clauses of the U.S. and Nebraska Constitutions. The court found that the statute permitted sufficient time for parents to assert claims and that the government had a sufficient interest in preventing children from being removed from stable homes after a certain period of time. Moreover, it found that § 43-1411 did not violate Bryan's rights under the Equal Protection Clauses of the U.S. and Nebraska Constitutions. It rejected Bryan's arguments that § 43-1411 impermissibly discriminated against men as opposed to women and found that Bryan lacked the standing to bring the argument that the statute discriminated against children born out of wedlock. Bryan timely appealed.

## IV. ASSIGNMENTS OF ERROR

Bryan assigns as error the trial court's finding (1) that Bryan could not file this action derivatively as T.B.'s next friend, (2) that Bryan did not meet his burden of proving equitable estoppel/fraud tolling of the statute of limitations found in § 43-1411, (3) that § 43-1411 is constitutional under the Equal Protection Clauses of the U.S. and Nebraska Constitutions, and (4) that § 43-1411 is constitutional under the Due Process Clauses of the U.S. and Nebraska Constitutions.

## V. ANALYSIS

This appeal raises statutory, equitable, and constitutional issues associated with § 43-1411. We consider the statutory question first.

### 1. NEXT FRIEND ARGUMENT

Bryan claims that § 43-1411 permits him to bring this action as the "next friend" of T.B. to secure T.B.'s rights. Anne and Adam claim that Bryan may not bring an action as T.B.'s next friend, because he has not shown T.B. is without a guardian. We reject Bryan's claim.

[4] An action to establish paternity is statutory in nature, and the authority for such action must be found in the statute and must be in accordance with the provisions thereof. *County of*

*Hall ex rel. Wisely v. McDermott*, 204 Neb. 589, 284 N.W.2d 287 (1979). See *Bohaboj v. Rausch*, 272 Neb. 394, 721 N.W.2d 655 (2006). Summarized in pertinent part, § 43-1411 provides that a paternity action may be instituted by (1) the mother or the alleged father of a child either during pregnancy or within 4 years after the child's birth or (2) the guardian or next friend of such child, or the state, either during pregnancy or within 18 years after the child's birth.

[5,6] Thus, a parent's right to initiate paternity actions under § 43-1411 is barred after 4 years, but actions brought by a guardian or next friend on behalf of children born out of wedlock may be brought within 18 years after the child's birth. In the context of a paternity action, a next friend is one who, in the absence of a guardian, acts for the benefit of an infant or minor child. See *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011). Actions brought by the next friend of the child are causes of action that seek to establish the child's rights rather than those of the parent. See *State on behalf of Kayla T. v. Risinger*, 273 Neb. 694, 731 N.W.2d 892 (2007) (quoting *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994)). It is generally recognized that a next friend must have a significant relationship with the real party in interest, such that the next friend is an appropriate alter ego for the party who is not able to litigate in his or her own right. *In re Adoption of Amea R., supra*.

Bryan brings this action in his own behalf and as T.B.'s next friend. Since T.B. was in the custody of Anne and Adam, his biological mother and legal father, Bryan did not show that T.B. was without a guardian.

This is not the first time we have considered this type of issue. *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000), involved an action for grandparent visitation rights wherein the grandmother of the minor child brought the action as the child's next friend. Since the minor child lived with his mother, we concluded there was no legal basis, reason, or cause for a "next friend" to institute a paternity action on the

minor child's behalf. The mother and father were the natural guardians of the minor child. We concluded the court correctly dismissed the paternity action, because the grandmother did not dispute that the child lived with his mother.

Bryan relies upon *Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751 (1984). He claims that this court suggested that parents may use the "next friend" status as a basis for bringing a claim of paternity. In *Doak*, the mother filed a paternity action against the putative father in 1981 and requested that he be declared the father of a child born to her in 1972. The court dismissed the action. In reviewing the constitutionality of Neb. Rev. Stat. § 13-111 (Reissue 1977), the predecessor statute to § 43-1411, we held:

> The clear import of the language of § 13-111 is that the mother's cause of action to establish the paternity of her child in order to recover her damages is barred 4 years after the child's birth. There is, however, no such limitation on a cause of action brought on the child's behalf by a guardian or next friend to establish paternity and secure the child's rights. . . . Accordingly, [the mother's] equal protection and due process arguments [in this case] are misdirected. The dismissal of her petition has no effect upon her child's cause of action.

*Doak*, 216 Neb. at 334-35, 343 N.W.2d at 753.

Bryan misinterprets *Doak* as an indication that parents may enforce their rights through the guardian or next friend provisions of § 43-1411. And *Doak* is clearly distinguishable from the case at bar. In *Doak*, we considered whether a mother, who had physical care of a child, could prosecute a cause of action as a child's next friend to assert the child's rights. The father sought to prevent that cause of action from proceeding, most likely to avoid paying child support. We held that although the mother was barred from bringing an action to assert her own rights and recover damages after 4 years, she could have prosecuted a cause of action as the child's next friend, because such an action would have been to secure the child's rights and, therefore, would be permitted under the statute.

Bryan argues:

> While the issue here does not relate to [T.B.'s] right to
> child support from his father, [T.B.] should have the right
> to an emotional bond with his biological father that is the
> same as his right to a relationship with the person that is
> married to his mother at the time of his birth.

Brief for appellant at 21. We disagree. This relationship is
not the type contemplated by § 43-1411, nor is it the type of
support with which the State has a reasonable interest. Bryan
does not cite to any case in which a court in a similar context
has interpreted "support" to mean an emotional bond. Taking
Bryan's argument to its logical conclusion, a "next friend"
under § 43-1411 could bring suit to secure the child's "right
to an emotional bond" with the child's biological parent. We
reject this argument.

We conclude that Bryan cannot bring this action as the next
friend of T.B. under § 43-1411. Bryan admits in the opera-
tive pleadings that T.B. is in the care of his biological mother.
Thus, applying our holding in *Zoucha v. Henn*, 258 Neb. 611,
604 N.W.2d 828 (2000), Bryan may not bring the paternity
action as T.B.'s "next friend." He has no significant relation-
ship with T.B., and there is no indication that T.B. is without
financial support. Bringing this action as T.B.'s next friend is a
thinly veiled attempt to bypass the 4-year limitations period in
§ 43-1411 for actions brought by parents.

## 2. EQUITABLE DEFENSES TO
### STATUTE OF LIMITATIONS

We next consider Bryan's equitable defenses to the statute
of limitations. At the time this action was brought, T.B. was 8
years of age. Bryan clearly failed to bring his action within the
limitations period pursuant to § 43-1411. He asserts the limita-
tions period was tolled on the grounds of fraud and equitable
estoppel. Bryan argues that Anne, by telling him on several
occasions that he was not T.B.'s biological father, committed
fraud and is equitably estopped to assert the statute of limita-
tions as a defense.

A claim of equitable estoppel rests in equity, and in reviewing judgments and orders disposing of claims sounding in equity, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the trial court. See *deNourie & Yost Homes, LLC v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014). Thus, we review Bryan's equitable defenses de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id.* For the reasons stated below, we reject Bryan's arguments in equity.

[7-9] Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his or her own deeds, acts, or representations. *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). The equitable doctrine of estoppel in pais may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations, and a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). Equitable estoppel is not limited to circumstances of fraud but may also be applied to prevent an inequitable resort to a statute of limitations where the other elements of estoppel are present. *Mogensen v. Mogensen*, 273 Neb. 208, 729 N.W.2d 44 (2007).

[10] The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *Olsen v. Olsen*, 265 Neb. 299, 657 N.W.2d 1 (2003).

As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Id.*

The district found that Anne made false statements to Bryan, because she could not have known which man was the father of T.B. But it determined that Bryan was relieved to be told he was not the father, because he wished to remain in his marriage. The court concluded Bryan's decision to not timely bring the action was not caused by Anne's statements, but by his desire to conceal the affair from his wife. The court found Bryan could not have reasonably relied on Anne's statements that he was not T.B.'s father, because he knew that they had not used contraceptives during the period in which they regularly engaged in sexual intercourse. The court determined that Bryan failed to exercise his rights within the required time period, which demonstrated a lack of reasonable diligence. We agree.

Our review leads us to conclude that Bryan could not have reasonably and in good faith relied on Anne's statements that he was not T.B.'s father. Bryan had unprotected sexual intercourse with Anne on numerous occasions around the time she became pregnant. He knew that Anne had not conceived a child in the 5 years of marriage prior to the affair. He knew or should have known that Anne's statements were not based on reliable information.

[11,12] We find that Bryan failed to meet his burden to show that he had no knowledge or the means of knowledge of the truth as to the facts in question or constructive knowledge of the facts. Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have. *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014). Only reasonably justified reliance will create an

estoppel. *Breslow v. City of Ralston*, 197 Neb. 346, 249 N.W.2d 205 (1977).

Similarly, we reject Bryan's testimony that he did not know about the availability of DNA testing. The availability of DNA testing to determine paternity is common knowledge and accessible to the public, and therefore, we reject Bryan's claim that he was unaware that DNA testing was available to him at the time of T.B.'s birth.

[13] For the same reasons, we reject Bryan's fraud argument. An essential element of actionable false representation is justifiable reliance on the representation. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). Where a plaintiff fails to use ordinary prudence in relying on a false statement, he or she cannot show that such reliance was justified. See *Lucky 7 v. THT Realty*, 278 Neb. 997, 775 N.W.2d 671 (2009). Had Bryan used ordinary prudence, he would have been able to timely discover that he was T.B.'s biological father.

In the case at bar, the facts closely resemble those in *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012). There, the mother had been in a sexual relationship with two men around the time she became pregnant. The biological father moved away before the child was born, and the second man obtained a decree of paternity. At the time he left town, the biological father did not know that the mother was pregnant or that there was a possibility that he was the father of the child. A decade later, and years after the mother had lost custody of the child to the purported father, the biological father attempted to intervene and assert his rights. We held that the biological father was not entitled to equitable relief, because he did not exercise reasonable diligence to determine whether he was the minor child's father. We stated:

> While [the biological father] slept on his rights, [the purported father] fulfilled the obligations of a father in justifiable reliance on the 2001 paternity decree. [The purported father] was judicially determined to be [the

minor child's] father, and he developed a parental relationship with her. He exercised his visitation rights when [the child] was in [the mother's] custody, paid child support, and later took custody of [the child] after she was removed from [the mother's] care. [The biological father's] failure to exercise any attempt to discover whether he was the biological father of [the child] prevents him from obtaining equitable relief.

*Id.* at 949, 814 N.W.2d at 745.

We find that Bryan did nothing to determine whether he was the biological father, despite knowing of the substantial possibility that he was the biological father. Meanwhile, Adam fulfilled all the obligations of a father to T.B. and established a parent-child relationship. The trial court found that under the circumstances, Bryan is not entitled to equitable relief. We agree.

Bryan was not deceived or hoodwinked into inactivity by Anne's actions and statements, thereby preventing him from bringing this action in a timely manner. Rather than diligently and prudently attempting to establish paternity within the first 4 years after T.B.'s birth, he did nothing for 8 years. Consequently, Bryan's claim that he was defrauded has no merit, and he has shown no basis to toll the statute of limitations in § 43-1411.

We do not find persuasive Bryan's claims that this case is similar to *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). *Manker* involved the husband's secretly divorcing his wife after she signed a voluntary appearance and property settlement agreement. Although he filed the paperwork with the court and obtained a dissolution of marriage, the husband told her that he was only considering a divorce and had time to stop it.

The couple continued to hold each other out as husband and wife for 14 years following the dissolution. They cohabitated, they listed each other as spouses and left each other the entirety of their estates in their respective wills, the husband

listed her as his spouse on health insurance forms, and the husband acknowledged a child born during the time period as his son. Because the husband always retrieved the mail, she never received notice that their marriage had been dissolved. Furthermore, he handled the couple's finances. Therefore, nearly all the "joint property" acquired during the 14 years following the dissolution was titled in the husband's name. Upon learning of the dissolution after the husband made suspicious comments, the wife attempted to separate from him. However, the husband convinced her to keep the dissolution a secret to avoid getting into trouble with the Internal Revenue Service and losing his job.

We held that the doctrine of equitable estoppel was necessary to prevent the husband's inequitable resort to a statute of limitations. The husband had repeatedly misrepresented to the wife and others that they remained married. He repeatedly prevented the wife from learning the truth. Upon her learning the truth, the husband convinced her to sit on her rights by causing her to believe that pursuing her rights would cause him to lose his job and the Internal Revenue Service to seize their assets, thereby losing any means of support.

In contrast to *Manker*, in this case, there was not a systematic pattern of fraud. Bryan understood that there was a substantial possibility, if not probability, that he was T.B.'s father. Anne did not know who was the father. At the time of conception, she had unprotected sexual intercourse with both men. Bryan is not permitted to bring this paternity action as T.B.'s next friend, nor do his equitable claims have merit. He has shown no statutory or equitable basis for a reversal of the district court's order.

### 3. CONSTITUTIONAL ISSUES

[14] We next turn to Bryan's constitutional challenges to § 43-1411. Bryan challenges § 43-1411 on the basis that it violates the Equal Protection and Due Process Clauses of the U.S. and Nebraska Constitutions. Constitutional interpretation is a question of law on which we are obligated to reach

a conclusion independent of the decision by the trial court. *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). The burden of demonstrating a constitutional defect rests with the challenger. *Coffey v. County of Otoe*, 274 Neb. 796, 743 N.W.2d 632 (2008). A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. *State v. Loyuk*, 289 Neb. 967, 857 N.W.2d 833 (2015).

### (a) Equal Protection Challenge

Bryan claims that § 43-1411 violates the Equal Protection Clause because it impermissibly discriminates against natural fathers and children born out of wedlock.

### (i) Gender-Based Classification

We have held that parents are the natural guardians of their minor children. *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000). Bryan argues that because natural parentage of a mother is established at birth, but a father's parentage is not, a mother can bring paternity actions on behalf of the child for up to 18 years, whereas fathers have only 4 years.

[15,16] Where a statute is challenged under either the Due Process Clause or the Equal Protection Clause of the state and federal Constitutions, the general rule is that legislation is presumed to be valid, and the burden of establishing the unconstitutionality of the statute is on the one attacking its validity. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013). The dissimilar treatment of dissimilarly situated persons does not violate equal protection rights. *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006). Under principles of equal protection, the government may not subject men and women to disparate treatment when there is no substantial relation between the disparity and an important state interest. *In re Adoption of Baby Girl H.*, 262 Neb. 775, 635 N.W.2d 256 (2001), *disapproved on other grounds, Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012).

[17] The initial inquiry in an equal protection analysis focuses on whether the challenger is similarly situated to another group for the purpose of the challenged governmental action. *State v. Rung*, 278 Neb. 855, 774 N.W.2d 621 (2009). Absent this threshold showing, one lacks a viable equal protection claim. *Id*. For the purposes of argument, we assume that Bryan has met this requirement.

Once the challenger establishes that he or she is similarly situated to another group, the analysis then focuses on whether the challenger is receiving dissimilar treatment pursuant to the statute at issue as compared to the similarly situated group. *Sherman T. v. Karyn N., supra*. On its face, § 43-1411 treats mothers and putative fathers identically by imposing a 4-year limitations period on paternity actions brought by parents asserting their own rights. Similarly, the statute does not discriminate based on gender in allowing a guardian or next friend to bring an action on behalf of the child.

Our case law shows that § 43-1411 has been invoked to bar paternity actions brought by both men and women after 4 years. More fundamentally, Bryan's argument fails to recognize the distinction between bringing a paternity action to vindicate the parent's right as compared to filing an action to vindicate the rights of the child. See, *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994); *Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751 (1984).

It is unclear what Bryan believes are the necessary measures that would place mothers and fathers "on a level playing field" in bringing paternity actions. His argument suggests that *any* time limitation on a parent's right to assert his or her right to bring a paternity action is unconstitutional. That notion is patently hostile to the rights of the child and the State's interest in preserving family stability. More fundamentally, it is contrary to our law regarding paternity actions and support. Consequently, we reject Bryan's argument that § 43-1411 impermissibly discriminates against men.

*(ii) Discrimination Against Children*
*Born out of Wedlock*

[18,19] In addition to gender-based classification, Bryan claims that § 43-1411 impermissibly discriminates against children born out of wedlock. But Bryan lacks standing to raise this issue, because he would be required to do so on behalf of T.B. Standing is the legal or equitable right, title, or interest in the subject matter of a controversy. *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015). If the party appealing an issue lacks standing, the court is without jurisdiction to decide the issues in the case. *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

As the child born out of wedlock, the right and interest in challenging § 43-1411 on that basis belongs to T.B. We have determined that Bryan was not permitted to bring a paternity action on behalf of T.B. or assert T.B.'s rights. Similarly, we find he lacks standing to raise this issue. Regardless, we note that this issue was addressed in our opinion *Doak v. Milbauer, supra* (holding that § 13-111 was constitutional because it did not bar children born out of lawful wedlock from themselves bringing the action after the specified period of limitations).

(b) Due Process Challenge

Bryan argues that § 43-1411 violates his due process rights. He asserts that society has changed a great deal in the last 20 years and that the State no longer has an interest in imposing a limitations period on parents bringing paternity actions. Bryan's arguments seem to allege that § 43-1411 violates his procedural due process rights. We reject Bryan's arguments.

[20-22] Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law. *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010). Due process does not guarantee an individual any particular form of state procedure; instead, the requirements of due process are satisfied if a person has

reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Id.*

Bryan bases his argument primarily on the holding in *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S. Ct. 233, 105 L. Ed. 2d 91 (1989). There, the Court upheld a California statute which created a presumption that a husband is the natural father of a child born during a marriage. In *Michael H.*, a putative natural father, whose blood tests indicated a 98.07 percent probability of paternity and who had established a parental relationship with the child, filed an action to establish paternity and a right to visitation. The Court held: (1) The statute creating a presumption that a child born to a married woman living with her husband is the child of the marriage did not violate the putative natural father's procedural due process rights, (2) the statute did not violate the putative natural father's substantive due process rights, (3) the child did not have a due process right to maintain a filial relationship with both the putative natural father and the husband, and (4) the statute did not violate the child's equal protection rights. In reaching its conclusions, the Court stated:

> In *Lehr v. Robertson*, a case involving a natural father's attempt to block his child's adoption by the unwed mother's new husband, we observed that "[t]he significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring," . . . and we assumed that the Constitution might require some protection of that opportunity . . . . Where, however, the child is born into an extant marital family, the natural father's unique opportunity conflicts with the similarly unique opportunity of the husband of the marriage; and

it is not unconstitutional for the State to give categorical
preference to the latter.

*Michael H.*, 491 U.S. at 128-29. Section 43-1411 is substan-
tially less rigid than the California statute. Section 43-1411
imposes a 4-year limitations period, whereas the California
statute imposed a 2-year limitations period. Moreover, whereas
§ 43-1411 allows putative fathers (such as Bryan) to bring
paternity actions within that time period, the California statute
seemingly barred persons outside the marriage from bringing
such actions.

Bryan claims that in contrast to the California statute in
*Michael H.*, § 43-1411 does not have a provision allowing for
visitation rights for natural fathers if they stood in loco parentis
to the child, which, for a variety of reasons, is often not the
case. Bryan's reliance upon *Michael H.* is misplaced. Under
§ 43-1411, the biological parent need not be in loco parentis to
the child to bring a paternity action. Instead, the sole require-
ment is that he or she must bring the action within the time
period provided in that statute.

We conducted a due process analysis in *Doak v. Milbauer*,
216 Neb. 331, 343 N.W.2d 751 (1984), when the mother chal-
lenged § 13-111—the predecessor statute to § 43-1411—on
equal protection and due process grounds. The mother claimed
the 4-year statute of limitations to bring paternity actions was
unconstitutional. There, we stated:

> More recently, the U.S. Supreme Court has held that
> restrictions on support suits by children born out of law-
> ful wedlock will survive equal protection scrutiny to the
> extent that they are substantially related to a legitimate
> state interest. However, the period for obtaining parental
> support must be long enough to provide a reasonable
> opportunity for those with an interest in such children
> to bring suit on their behalves. Further, any time limit
> on that opportunity has to be substantially related to the
> state's interest in preventing the litigation of stale or
> fraudulent claims. . . .

There is, however, a major distinction between the statutes determined to be constitutionally infirm in the above-cited cases and the statute at hand. Those statutes found not to pass constitutional muster purported to bar children born out of lawful wedlock from themselves bringing the action after the specified period of limitations. We do not so read our statute.

*Doak*, 216 Neb. at 333-34, 343 N.W.2d at 752-53 (citing *Mills v. Habluetzel*, 456 U.S. 91, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982)). We concluded that the statute was constitutional because it provided sufficient time for a natural parent, whether having custody of the child or not, to assert his or her rights. We conclude that § 43-1411 does not violate Bryan's due process rights.

We also reject Bryan's claims that "[o]ur society has changed such that protecting the 'legitimacy' of a child born during a marriage between a man and a woman is no longer a meaningful goal of the state." Brief for appellant at 30. This mischaracterizes the State's interest involved in § 43-1411. Even if protecting legitimacy is no longer important, a conclusion we need not and do not reach, the State certainly has a legitimate interest in protecting children from being removed from their homes and stability after an extended period has passed. See *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012). The blame in failing to timely bring a paternity action rests solely on Bryan.

## VI. CONCLUSION

For the reasons stated above, we affirm the order of the district court.

AFFIRMED.

McCORMACK, J., not participating.