Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

In re Estate of Gilbert R. Fuchs, deceased.
Jim R. Fuchs, Copersonal Representative of the
Estate of Gilbert R. Fuchs, deceased, appellant,
and Joseph M. Fuchs, Copersonal Representative
of the Estate of Gilbert R. Fuchs, deceased,
appellee, v. Julie K. Albin and
Jason R. Fuchs, appellees.

___ N.W.2d ___

Filed September 8, 2017.    Nos. S-16-694, S-16-849.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes.** Statutory interpretation presents a question of law.

4. **Judgments: Appeal and Error.** Appellate courts independently review questions of law decided by a lower court.

5. **Decedents' Estates: Limitations of Actions.** Under the Uniform Probate Code, the general rule is that no appointment or testacy proceeding may be commenced more than 3 years after the death.

6. ____: ____. Under the Uniform Probate Code, the statute of limitations is self-executing and ordinarily begins to run upon the decedent's death.

7. **Decedents' Estates: Statutes: Appeal and Error.** In interpreting the various sections of the Nebraska Probate Code, an appellate court may examine the comments to the code.

8. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

9. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

10. **Estoppel: Words and Phrases.** Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his or her own deeds, acts, or representations.

11. **Estoppel: Fraud.** The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

12. **Summary Judgment: Evidence.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.

13. **Limitations of Actions.** The doctrine of equitable tolling permits a court to excuse a party's failure to comply with the statute of limitations where, because of disability, irremediable lack of information, or other circumstance beyond his or her control, the plaintiff cannot be expected to file suit on time.

14. ____. Equitable tolling requires no fault on the part of the defendant.

15. ____. Equitable tolling requires due diligence on the part of the claimant.

Appeals from the District Court for Pierce County: Mark A. Johnson, Judge. Affirmed.

George H. Moyer, of Moyer & Moyer, for appellant.

Susan J. Spahn, of Endacott, Peetz & Timmer, P.C., L.L.O., for appellees Julie K. Albin and Jason R. Fuchs.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

Jim R. Fuchs, a son of Gilbert R. Fuchs and a copersonal representative of Gilbert's estate, appeals from the district court's order that dismissed his amended application to probate Gilbert's will. Jim alleged that he learned about Gilbert's will more than 3 years after he and his brother commenced an informal probate proceeding to administer Gilbert's intestate estate. The district court granted summary judgment to Gilbert's other two children, who had objected to probating the will, and dismissed the amended petition under Neb. Rev. Stat. § 30-2408 (Reissue 2016) as time barred.

## BACKGROUND

### Factual Background

Gilbert died on May 29, 2012. At the time of his death, Gilbert was unmarried and was survived by his four children: Jim, Joseph M. Fuchs, Julie K. Albin, and Jason R. Fuchs.

Gilbert was living in Norfolk, Nebraska, when he died, but he owned two houses, one in Norfolk and the other on the family farm. Both homes were in a state of disarray, with papers strewn all about.

Gilbert did not keep his important documents well organized, often leaving them lying about his houses or piled in his cars. Some of Gilbert's cars were sold after his death, and the subsequent purchasers would mail to the children various documents and photographs they had found inside the vehicles.

Either before or after his death, each of the children had access to Gilbert's homes. Jim, Julie, and Jason searched

Gilbert's homes for his important documents, such as a will, deeds, and car titles. Jim attempted to find Gilbert's will by calling attorneys in the area and checking for safe deposit boxes at banks Gilbert had done business with. Both Jim and Joseph checked with surrounding courthouses for the presence of a will. Julie and Jason cleaned out Gilbert's houses and placed papers and other items in storage totes, two of which Julie took back to her home in Chicago, Illinois. Despite the parties' efforts, no will was found.

On July 8, 2015, Joseph received a plain brown envelope. The envelope was postmarked July 6, 2015, from Omaha, Nebraska. Inside the envelope, Joseph found Gilbert's last will and testament, dated January 26, 1987. In that will, Gilbert left all his property to Jim and named Jim as his personal representative. Joseph delivered the will to Jim.

### LOWER COURT PROCEEDINGS

On June 12, 2012, Jim and Joseph filed an "Application for Informal Appointment of Personal Representative in Intestacy" in the county court for Pierce County, Nebraska. In their application, they alleged that after the exercise of reasonable diligence, they were unaware of any unrevoked testamentary instrument relating to property having a situs in the state. As a result, they were appointed as copersonal representatives.

The matter was still being probated, when, on July 15, 2015, Jim filed a petition for the formal probate of Gilbert's 1987 will. Julie and Jason (hereinafter collectively the objectors) objected to the probate and Jim's appointment. On August 24, Jim transferred his probate application from county court to district court.

In September 2015, the objectors filed a supplemental answer to Jim's application. They alleged that in June 2012, Jim and Joseph applied for informal appointment as copersonal representatives of Gilbert's intestate estate and received that appointment on the same day; that Jim's probate application

was time barred under § 30-2408 because it had been more than 3 years since Gilbert's death and the informal appointment proceedings; that Jim was estopped from seeking a probate by a memorandum of understanding, which Jim had signed while acting as a copersonal representative of Gilbert's intestate estate; and that because Jim and Joseph had already sold estate property and made partial distributions of the estate, Gilbert's will could no longer be probated. They also objected to Jim's appointment as copersonal representative, because they had previously petitioned to remove Jim and Joseph as informal copersonal representatives, which petition was still pending before the county court.

The objectors moved for summary judgment. Jim then moved to file an amended application in which he had alleged for the first time that Joseph showed him Gilbert's 1987 will on July 13, 2015, 2 days before Jim filed his original application for a formal probate. He alleged that Joseph received Gilbert's will in the mail on July 8, 2015, in an envelope that was postmarked in Omaha but had no return address. He alleged that when Gilbert died, he had two residences and his legal documents were strewn about in both houses. He believed that one of the persons who had helped search for a will had found one and then waited to disclose it until the 3-year statute of repose had expired. He alleged that "all parties hereto should now be estopped to claim that the will be denied probate."

The objectors filed an amended answer where they alleged Jim told the objectors that Gilbert did not leave a will and that Jim had scheduled a family meeting with an attorney for June 4, 2012, 6 days after Gilbert's death. The objectors alleged that in reliance on Jim's representation, they agreed to the administration of Gilbert's intestate estate by Jim and Joseph and subsequently incurred over $120,000 in attorney fees and costs related to that administration and also to protect Gilbert's estate. They also alleged that before Gilbert's death, Jim said he had heard that Gilbert had made a will leaving his estate

to Jim, and that Jim had ample opportunity to investigate whether such a will existed. They also alleged the amended petition was frivolous and sought attorney fees.

In June 2016, the court issued an order sustaining the objectors' motion for summary judgment. According to the court's findings, documents that were gathered up from Gilbert's home after his death were placed in storage totes. Julie took two of these totes home with her to Chicago without the personal representatives reviewing the documents first, but other totes remained in Gilbert's house. The court noted that Julie had found an old ledger in which Gilbert noted an expense for a "'farm will.'" But the court found that Jim had failed to show evidence that anyone had taken Gilbert's will to illegally suppress it past the expiration of the statute of repose. It sustained the objectors' motion for summary judgment and dismissed Jim's amended application because it was filed past the deadline in § 30-2408.

## ASSIGNMENT OF ERROR

Jim assigns that the district court erred in sustaining the objectors' motion for summary judgment.

## STANARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[2]

---

[1] *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017).

[2] *Id.*

[3] Statutory interpretation presents a question of law.[3]

[4] Appellate courts independently review questions of law decided by a lower court.[4]

## ANALYSIS

Jim posits three arguments as to why the court erred in denying the formal probate of Gilbert's will. First, he contends that § 30-2408's 3-year statute of limitations is not applicable because the initial probate proceeding had not been fully completed. Second, he contends that the will was deliberately suppressed by one of the heirs and that therefore equitable estoppel bars the application of the 3-year statute of limitations. Third, he contends the 3-year statute of limitations should be equitably tolled.

Section 30-2408 provides, in relevant part, the following:

> No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to probate a will previously probated at the testator's domicile and appointment proceedings relating to an estate in which there has been a prior appointment, may be commenced more than three years after the decedent's death, except . . . (4) an informal probate or appointment or a formal testacy or appointment proceeding may be commenced thereafter if no formal or informal proceeding for probate or proceeding concerning the succession or administration has occurred within the three-year period, but claims other than expenses of administration may not be presented against the estate. These limitations do not apply to proceedings to construe probated wills or determine heirs of an intestate.

---

[3] *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[4] *Id.*

District Court Did Not Err in Determining
§ 30-2408 Barred Admission of Gilbert's
Will to Formal Probate

At common law, no definite time is prescribed within which a will is to be proved after the death of the testator, and the right to prove a will is not barred by the lapse of any time, however great.[5]

[5,6] Nonetheless, under the Uniform Probate Code, the general rule is that no appointment or testacy proceeding may be commenced more than 3 years after the death.[6] The statute of limitations is self-executing and ordinarily begins to run upon the decedent's death.[7]

The record is clear that Jim's 2015 application was a petition for formal testacy which was filed more than 3 years after Gilbert's death. The record is also clear that a prior proceeding for informal probate was pending at the time of Jim's 2015 application. The parties, however, disagree as to whether the prior proceeding for informal probate must have been fully completed or whether it was sufficient that it was merely commenced.

Jim contends that if a prior proceeding has been filed, that proceeding must have fully adjudicated the rights of the parties. In making that contention, he relies on the Nebraska comment to § 30-2408 which states that prior proceedings adjudicate finally the rights of the parties.[8] Therefore, Jim contends that such prior proceedings must be fully completed to act as a bar to the exception in subsection (4) of § 30-2408.

The objectors contend that the prior proceeding must have been merely commenced. In making that contention, they rely upon § 3-106 of the Uniform Probate Code, which binds

[5] 95 C.J.S. *Wills* § 559 (2011).

[6] 31 Am. Jur. 2d *Executors and Administrators* § 230 (2012).

[7] *Id.*

[8] See § 30-2408 (Reissue 1989) (statutory comment).

interested parties to orders of the court, after proper notice, in proceedings to construe probated wills or determine heirs which concern estates that have not been and cannot now be opened for administration.[9] The comment to § 3-106 sets forth that that language of § 3-106—coupled with the exceptions to the limitations provisions in § 3-108 of the Uniform Probate Code, from which § 30-2408 was derived, that permit proceedings to construe wills and to determine heirs of intestates to be commenced more than 3 years after death—clarifies the purpose of the draftsmen to offer a probate proceeding to aid the determination of rights of inheritance of estates that were not opened for administration within the time permitted by § 3-108.[10]

[7] In interpreting the various sections of the Nebraska Probate Code, this court may examine the comments to the code.[11] Upon reading the comments to § 30-2408, we find it is clear that the enactment of § 30-2408 was intended to establish a basic limitation period of 3 years within which it may be determined whether a decedent left a will and to commence administration of his estate.[12] Further, the comment to § 30-2408 regarding subsection (4) indicates that the time limitation is not applicable if no prior formal or informal probate proceeding has occurred.[13]

We held in *In re Estate of Nemetz*[14] that § 30-2408 "permits an informal appointment proceeding to be commenced more than 3 years after the decedent's death 'if no formal or informal proceeding for probate or proceeding concerning the succession or administration has occurred within the three-year period.'" However, in that case, since no prior probate proceeding had

---

[9] Unif. Probate Code § 3-106, 8 (part II) U.L.A. 35 (2013).

[10] *Id.*, comment.

[11] *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990).

[12] See § 30-2408 (Reissue 1989) (statutory comment).

[13] See *id.*

[14] *In re Estate of Nemetz*, 273 Neb. 918, 921, 735 N.W.2d 363, 367 (2007).

been commenced, we were not required to consider whether an informal proceeding had occurred.

In *In re Estate of Harris*,[15] the Montana Supreme Court also considered the effect of a will offered for probate more than 3 years after the decedent's death. Montana is a state that has adopted the Uniform Probate Code, and it has enacted legislation nearly identical to our § 30-2408. The Montana court found the admission of the late-offered will was not barred by the 3-year statute of limitations under the exception that no proceedings concerning succession or estate administration had occurred within the 3-year period of the decedent's death.[16] In doing so, the court noted that this exception was not applicable if "there has been any other proceeding regarding succession or estate administration during the three-year period."[17] Later, when applying the exception, the court noted that "[n]o other proceedings had been opened since [decedent's] death."[18]

[8,9] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[19] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[20]

The Legislature has not defined "occur"; thus, we look to the commonly understood, everyday definition of the word. According to Black's Law Dictionary, "occur" means "[t]o happen; to meet one's eye; to be found or met with; to present

---

[15] *In re Estate of Harris*, 379 Mont. 474, 352 P.3d 20 (2015).

[16] *Id.*

[17] *Id.* at 477, 352 P.3d at 23.

[18] *Id.* at 480, 352 P.3d at 25.

[19] *Clarke, supra* note 3.

[20] *State v. Beitel*, 296 Neb. 781, 895 N.W.2d 710 (2017).

itself; to appear; hence, to befall in due course; to take place; to arise."[21] The definitions in another dictionary are: "1: to be found or met with: appear 2: to come into existence: happen 3: to come to mind."[22]

The plain and ordinary reading of § 30-2408 indicates that a will may be probated only if no prior formal or informal proceeding for probate has occurred. The plain and ordinary reading of § 30-2408 does not indicate that the prior proceeding must have been completed. As a result, the district court did not err in determining that Jim's application to probate Gilbert's will was time barred.

### District Court Did Not Err in Determining That Jim Failed to Prove Elements of Equitable Estoppel

[10] Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his or her own deeds, acts, or representations.[23]

[11] The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.[24] As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped;

---

[21] Black's Law Dictionary 1080 (6th ed. 1990).

[22] Merriam Webster's Collegiate Dictionary 802 (10th ed. 2001).

[23] *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[24] *Id.*

and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.[25]

The district court found that there was no evidence that anyone intentionally concealed the will from the family. More specifically, it found that there was no evidence presented to demonstrate the person or persons who sent the will to Joseph had any intention of illegally suppressing the will beyond the 3-year statute of limitations. As a result, the court found that Jim failed to meet his factual burden to show equitable estoppel.

The record before us indicates that Gilbert owned the two homes at the time of his death. It is undisputed that all of the parties had access to his homes before and/or after his death and that each of the children, with the assistance of others, searched the home for important documents, such as a will, deeds, or car titles.

All parties agree that Gilbert lacked an efficient filing system for his important documents. The evidence indicates that he had papers strewn about his home and that he often kept important documents in his vehicles.

Assuming, without deciding, that the 3-year statute of limitations can be equitably extended, Jim presented insufficient evidence to invoke the doctrine of equitable estoppel. No evidence was presented that the objectors committed any action which would have amounted to a false representation or concealment of the existence of Gilbert's will; that the objectors had any knowledge, actual or constructive, of the existence of Gilbert's will; or that the objectors had the intention, or at least the expectation, that the suppression of Gilbert's will would influence Jim.

[12] Jim's allegations of how the will was concealed and by whom are not sufficient to overcome the district court's finding of summary judgment. Conclusions based on guess,

---

[25] *Id.*

speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.[26] As a result, the denial of Jim's claim of equitable estoppel was not error.

### DISTRICT COURT DID NOT ERR IN
### REJECTING JIM'S ARGUMENT
### OF EQUITABLE TOLLING

[13-15] Jim also contends that the doctrine of equitable tolling should overcome the objectors' motion for summary judgment. The doctrine permits a court to excuse a party's failure to comply with the statute of limitations where, because of disability, irremediable lack of information, or other circumstance beyond his or her control, the plaintiff cannot be expected to file suit on time.[27] Unlike the doctrine of equitable estoppel, equitable tolling requires no fault on the part of the defendant.[28] Equitable tolling, however, does require due diligence on the part of the claimant.[29]

Jim is correct that we have considered the principle that a statute of limitations can be equitably tolled.[30] In these cases, we were confronted with situations in which the claimant alleged that it was enjoined from bringing a claim by another court or governmental entity.

In *Macke v. Jungels*,[31] we held that it would be inequitable to allow the statute of limitations to run on a claim for damages

---

[26] *Sulu v. Magana*, 293 Neb. 148, 879 N.W.2d 674 (2016).

[27] *Miller v. Runyon*, 77 F.3d 189 (7th Cir. 1996).

[28] *Id.*

[29] *Id.*

[30] See *Macke v. Jungels*, 102 Neb. 123, 166 N.W. 191 (1918); *Lincoln Joint Stock Land Bank v. Barnes*, 143 Neb. 58, 8 N.W.2d 545 (1943); and *Becton, Dickinson & Co. v. Nebraska Dept. of Rev.*, 276 Neb. 640, 756 N.W.2d 280 (2008).

[31] *Macke, supra* note 30.

during the pendency of an action enjoining the defendant from bringing suit on that claim.

In *Lincoln Joint Stock Land Bank v. Barnes*,[32] defendants in a mortgage foreclosure appealed a decree of foreclosure in favor of the plaintiff. The foreclosure was commenced June 7, 1928, and on December 17, 1930, the case was removed from the docket but remained pending with leave to reinstate pursuant to a federal court order restraining the plaintiff from proceeding further. The action was subsequently reinstated, and the defendants contended that the plaintiff was barred by the applicable statute of limitations. We concluded that the plaintiff having been restrained from proceeding further by a paramount authority, the period thereof should not be considered in computing the time for the statute of limitations to run and the plaintiff was not so barred.

In *National Bank of Commerce v. Ham*,[33] a bank filed an action against a defaulting borrower beyond the applicable statute of limitations. The bank argued that the statute of limitations had been tolled because the borrower had been subject to an automatic bankruptcy stay. We determined that equitable principles did not apply, because the bankruptcy code provided an extra 30 days to file an action if the claim expired before the automatic stay was lifted or the bankruptcy was dismissed. We found no inequity in requiring the bank to commence its action within 30 days following the termination or dismissal of the bankruptcy.

In *Brodine v. Blue Cross Blue Shield*,[34] an insured sued her insurance provider in federal court for benefits the provider had denied. While the federal case was pending, the 3-year statute of limitations in the contract expired. The federal action was ultimately dismissed by agreement of the parties.

---

[32] *Barnes, supra* note 30.

[33] *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999).

[34] *Brodine v. Blue Cross Blue Shield*, 272 Neb. 713, 724 N.W.2d 321 (2006).

After the federal case was dismissed, the insured sued the insurer in state court. We concluded that that the applicable limitations period was not tolled during the pendency of the federal action.

In the instant case, Jim commenced the running of the statute of limitations by bringing the application for informal intestacy proceedings. In doing so, he alleged that after diligent search, no will was found, despite indications that he was aware Gilbert had a will. Further, he brought the application within 1 week of Gilbert's death. It is difficult to believe that under the state of disarray of Gilbert's homes and his lack of a filing system, any diligent search could have been completed within 1 week of his death. The record also shows that the objectors did not complete their efforts to clean out the house until well after the initial probate proceeding was implemented. Nothing in the record indicates that Jim was prevented from completing a more diligent search or awaiting the passage of additional time before he commenced his initial probate proceedings. Further, Jim was not prevented from bringing his subsequent claim by any paramount governmental authority. As a result, Jim is not entitled to an equitable tolling of the 3-year statute of limitations.

## CONCLUSION

The trial court did not err by granting summary judgment in favor of the objectors.

AFFIRMED.