FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0605

DA 14-0605

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 182

IN THE MATTER OF THE ESTATE OF
DOROTHEA E. HARRIS,

      Deceased.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DP 13-124(D)
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Stephen R. Brown, Garlington, Lohn & Robinson, PLLP, Missoula,
Montana

    For Appellee:

        C. Mark Hash, Hash, O'Brien, Biby & Murray, PLLP, Kalispell, Montana

            Submitted on Briefs:  March 4, 2015
                    Decided:  June 30, 2015

Filed:

                             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     The surviving adult children (Contestants) of decedent Dorothea Harris (Dorothea) dispute both the informal probate process brought by their stepfather Lincoln Harris (Harris) as well as the validity of a will that devised to Harris all of the mineral rights from their mother's estate.  Contestants appeal an order of the Eleventh Judicial District Court, Flathead County, granting summary judgment in favor of Harris and concluding that Contestants had not offered sufficient evidence to challenge Dorothea's testamentary capacity or to support their allegations of undue influence.  We restate the issues on appeal as follows:

> *1.  Whether the District Court's order allowing probate of Dorothea's estate complies with § 72-3-122, MCA.*
>
> *2.  Whether the District Court erred in granting summary judgment to Harris on Contestants' objections.*

¶2     We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Dorothea married Harris in 1965 after the death of her first husband, Frank Kinniburgh, in 1963.  Frank Kinniburgh is the natural father of the three Contestants. Dorothea and Frank Kinniburgh also had a fourth child, Theodore, who died in 1997.

¶4     Dorothea's maiden name was Whiteman.  Dorothea inherited certain mineral interests in Richland County from her Whiteman ancestors.  On March 4, 1983, Dorothea executed a will (1983 Will) that devised in equal shares to her children, Contestants and Theodore, and her husband, Harris, all of her mineral interests in Richland County.

2

During 1997, Theodore became ill from a heart condition and died. Dorothea acted as Theodore's primary caregiver while he was ill. Dorothea also was sick during the time she cared for Theodore and, following his illness and death, Dorothea's health declined. Dorothea died two years later, in 1999.

¶5 On April 9, 1997, during the time that Dorothea was caring for Theodore, she executed a new will (1997 Will). The 1997 Will left Dorothea's entire estate to Harris, including all of the mineral interests in Richland County, and named Harris as Personal Representative. Harris believed that he and Dorothea held all assets jointly with rights of survivorship and therefore that he did not need to probate Dorothea's 1997 Will. Earnings from the oil and gas royalties apparently were made payable to both Dorothea and Harris during their marriage.

¶6 Fourteen years later, in 2013, while preparing to drill a well involving the Richland County interests, Diamond Resources, an oil and gas company, determined that Harris was not, in fact, the legal owner of the mineral interests. Diamond Resources informed Harris that a Montana probate proceeding would be required before proceeds from those interests could be distributed. Specifically, Diamond Resources required a deed of distribution conveying Dorothea's mineral interests. Accordingly, in July 2013, Harris filed an application for informal probate of the 1997 Will and for appointment as Personal Representative.

¶7 The Clerk of Court granted Harris's application, admitted the 1997 Will to informal probate, and—as specified in the will—appointed Harris as Personal

3

Representative. After receiving notice of the informal probate, Contestants filed pro se requests for a hearing to contest the transfer of all the mineral interests to Harris. Contestants maintained that it was their mother's intent that they inherit the mineral rights in Richland County. Responding to Contestants' filings, the District Court ordered that no hearing would be held until Contestants filed verified objections under § 72-1-310, MCA. Contestants filed objections and the District Court held a status conference, at which time the court determined that no distribution of the mineral interests would occur until the objections were resolved.

¶8      A few months later, Harris, in his capacity as Personal Representative, moved for summary judgment and requested that the court allow informal probate of the estate in accordance with the 1997 Will. Contestants, through counsel, opposed the motion on the grounds of untimeliness of the probate of the will, undue influence, and lack of testamentary capacity. Both parties submitted affidavits. Following a hearing, the District Court determined that there were no genuine issues of material fact regarding Dorothea's testamentary capacity when she executed the 1997 Will, or any genuine issues regarding whether Harris exerted undue influence on Dorothea. The District Court entered a written order allowing Harris to continue with probate of the estate. Contestants appeal.

## STANDARDS OF REVIEW

¶9      The interpretation of a statute is a matter of law that we review de novo. *Reichert v. State*, 2012 MT 111, ¶ 19, 365 Mont. 92, 278 P.3d 455. We also review a district

court's summary judgment rulings de novo. *Victory Ins. Co. v. Mont. State Fund*, 2015 MT 82, ¶ 10, 378 Mont. 388, 344 P.3d 977. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Victory*, ¶ 10.

## DISCUSSION

¶10    *1. Whether the District Court's order allowing probate of Dorothea's estate complies with § 72-3-122, MCA.*

¶11    Contestants argue that, under the Uniform Probate Code (UPC) § 72-3-122, MCA, the District Court erred by permitting Harris to initiate probate proceedings on Dorothea's estate fourteen years after her death. Under the UPC (and with one exception not applicable here), "to be effective to prove the transfer of any property . . . , a will must be declared to be valid by an order of informal probate by the clerk or an adjudication of probate by the court." Section 72-3-102, MCA. Section 72-3-122(1), MCA, states that, generally, no formal or informal probate or appointment proceeding "may be commenced more than 3 years after the decedent's death," but proceeds to list exceptions to this rule. *See also* § 72-3-203(1)(d), MCA ("An application for informal probate of a will must state . . . that the time limit for informal probate . . . has not expired either because 3 years or less have passed since the decedent's death or, if more than 3 years from death have passed, the circumstances as described in 72-3-122 authorizing tardy probate have occurred"). Harris invokes the exception found in § 72-3-122(1)(d), MCA. That subsection states,

5

an informal appointment or a formal testacy or appointment proceeding may be commenced after the time period if no proceedings concerning the succession or estate administration have occurred within the 3-year period after the decedent's death, but the personal representative has no right to possess estate assets as provided in 72-3-606 beyond that necessary to confirm title to the property in the successors to the estate, and claims other than expenses of administration may not be presented against the estate.

¶12    Subsection (d) therefore permits an informal appointment or formal testacy proceeding to be initiated more than three years after the decedent's death with three limitations. First, the subsection is inapplicable if there has been any other proceeding regarding succession or estate administration during the three-year period. Second, no claims other than for expenses of administration may be considered in a late-filed proceeding. Third, the personal representative's right to possess estate assets is limited to the possession necessary to confirm title to the estate's assets in the estate's successors. We examine whether Harris's initiation of the probate proceedings in this case runs afoul of any of subsection (d)'s requirements.

¶13    As to the first requirement, the record establishes that there was no proceeding regarding succession or estate administration during the three-year period following Dorothea's death. Harris's action therefore does not overstep the first limitation.

¶14    Regarding the second limitation, a "claim" is a liability of the decedent or of the estate arising at or after the decedent's death, including funeral expenses and expenses of administration, but does "not include . . . demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate." Section 72-1-103(6), MCA. A claim against the estate is made for matters such as a debt

owed by the decedent or by the estate, or for fees of the personal representative. *See In re Estate of Barber*, 239 Mont. 129, 140, 779 P.2d 477, 484 (1989). The definition of a "claim" is distinct from the definition of a "devise," which "means a testamentary disposition of real or personal property." Section 72-1-103(11), MCA. *See also Estate of Yogiji*, 311 P.3d 1224, 1228 (N.M. Ct. App. 2013) (holding that a wife's action seeking to identify assets representing her share of community property is not a "claim" against husband's estate). Harris is not pursuing a debt owed by Dorothea or her estate. Accordingly, he has not overstepped the limitation that no claims other than for expenses of administration may be considered.

¶15 Our focus therefore turns to the third limitation, which permits a personal representative to possess estate assets only to the extent "necessary to confirm title to the property in the successors[1] to the estate." Section 72-3-122(1)(d), MCA. Under the UPC, both real and personal property devolve to a devisee immediately upon the testator's death, "subject to" the estate's administration. Section 72-3-101(2), MCA. Section 72-3-606(1), MCA, provides a personal representative the general authority to take possession or control of devised property when "necessary for purposes of administration." This section ensures that a personal representative retains the power to sell property of the estate, even property that has been specifically devised in the will, if necessary to pay the decedent's debts, the expenses of administration, or a family allowance. *Northland Royalty Corp. v. Engel*, 2014 MT 295, ¶ 11, 377 Mont. 11, 339

---

[1] "Successors" include "persons, other than creditors, who are entitled to property of a decedent under the decedent's will." Section 72-1-103(48), MCA.

P.3d 599; *Shephard v. Widhalm*, 2012 MT 276, ¶¶ 24-25, 367 Mont. 166, 290 P.3d 712. A deed of distribution "releases the property from any conditions to which it was subject during probate." *Shephard*, ¶ 26. Section 72-3-122(1)(d)'s third limitation prevents a personal representative from taking control of devised property to pay claims against the estate, as § 72-3-606(1), MCA, otherwise would allow.

¶16 The history of subsection (d)'s enactment confirms our interpretation. The original version of the UPC adopted by the Legislature in 1974 placed strict time limits on when a will could be submitted for probate. It disallowed proceedings to establish a will after three years following the decedent's death, consistent with the UPC's policy to "promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to its successors." Section 72-1-102(2)(c), MCA (1983) (repealed by 1993 Mont. Laws ch. 494, sec. 134). In *Estate of Taylor*, 207 Mont. 400, 675 P.2d 944 (1984), we held that, in light of this policy, if a will is not probated within three years of death, the assumption of intestacy is final. *Taylor*, 207 Mont. at 404, 675 P.2d at 946.

¶17 The Montana Legislature adopted subsection (1)(d) of § 72-3-122, MCA, following a 1993 UPC revision by the Uniform Laws Commission. The 1993 version of § 72-3-102 allowed a duly executed will that had not been probated to be admitted *as evidence of a devise* if there was no previous court proceeding concerning the succession or administration of the estate, and if either of two narrow exceptions was satisfied:

> (a) The devisee or his successors and assigns possessed the property devised in accordance with the provisions of the will; or
> (b) The property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings.

Section 72-3-102(2), MCA (1993).

¶18   The 1995 Legislature enacted general revisions to Montana's probate code, including revisions to §§ 72-3-102 and 72-2-122, MCA.  University of Montana School of Law Professor E. Edwin Eck, also a member of the Uniform Laws Commission, provided to the House Judiciary Committee a written explanation of the amendments regarding revisions to the three-year bar on probate and appointment provisions. E. Edwin Eck, *Written Comments to Mont. House Jud. Comm. on S.B. No. 132* (Feb. 28, 1995) (Eck Comments).  It explained that "the original § 72-3-102 exception permitted proof, otherwise than via a probate proceeding, of wills that were not probated within three years following death because of specified circumstances tending to justify the failure to act in the permitted time."  Eck Comments at 6.  The Joint Editorial Board for the UPC (JEB-UPC), a committee of the Uniform Laws Commission, recommended revising the UPC to remove the time bar on proceedings to establish wills, though the three-year period would remain operative to limit contests seeking to upset a prior informal probate or an administered intestate succession.  As Professor Eck's comments explained,

> Experience has taught that specification of limited circumstances excusing timely probate of a will was a mistake.  As originally framed, the § 72-3-122 exceptions as derived from original § 72-3-102 bristled with potential proof problems that invited litigation.  Also, it is far from clear that reasons behind the original UPC policy of definite settlement of certain unopened estates within an arbitrary time period served any policy important enough to block discovery and effectuation of duly executed wills.

Eck Comments at 6. Montana already had adopted its own amendment to § 72-3-122 in 1989 in an attempt to permit late limited proceedings in cases where no probate of a will or administration had occurred during the three-year period. *See* § 72-3-122(1)(d), MCA (1989). Professor Eck explained that this deviation, and similar measures in other states, demonstrated that late-offered wills occur frequently "and that UPC's effort to classify such estates as intestate unless original UPC § 3-102's exception applies is not acceptable to important numbers of practicing attorneys." Eck Comments at 6. Under the provision recommended by the JEB-UPC, "informal appointment proceedings can be used to generate title-perfecting paperwork in successors, whether testate or intestate, when no probate or appointment proceeding occurred within three years." Eck Comments at 7. Professor Eck noted that the former version of § 72-3-122 permitted this result, "but only in the narrowly described and troublesome to prove situations deemed sufficient to excuse timely proceedings." Eck Comments at 7.

¶19 Applying the foregoing to Harris's initiation of probate proceedings, we determine that Harris has not overstepped the limitation that he possess Dorothea's estate only as necessary to generate title perfecting work in the estate's successors. Harris opened the probate to confirm title to the mineral interests in accordance with the provisions of the 1997 Will. No other proceedings had been opened since Dorothea's death. The general three-year time bar does not bar probate of the estate. To the extent that *Estate of Taylor* conflicts with this holding, it relies on abrogated law, and it is therefore overruled.

¶20    *2. Whether the District Court erred in granting summary judgment to Harris on Contestants' objections.*

¶21    Contestants objected to the probate of the 1997 Will on the grounds that, when the will was drafted, Harris exerted undue influence on Dorothea and Dorothea lacked testamentary capacity. Harris responded by arguing that Contestants failed to submit evidence necessary to support these objections, and, in any event, Contestants' objections were barred by laches. The District Court granted summary judgment to Harris on Contestants' objections to the 1997 Will because it determined that Contestants failed to submit evidence raising a dispute of material fact about undue influence and testamentary capacity.

¶22    On appeal, Harris argues that the District Court correctly concluded that Contestants failed to support their claims adequately at the summary judgment stage. He also argues that, regardless, laches should apply to bar Contestant's objections. Laches exists where a "party is actually or presumptively aware of his rights but fails to act," resulting in a delay of "such duration or character as to render the enforcement of an asserted right inequitable." *Larson v. Undem*, 246 Mont. 336, 340, 805 P.2d 1318, 1321 (1990).

¶23    We agree that laches would bar Contestants from probating the 1983 Will. At least one of the contestants filed an affidavit explaining that he was aware that Dorothea had a will that disposed of the mineral interests in a way that benefited Contestants. Despite that knowledge, for fourteen years following Dorothea's death, Contestants never sought to probate the 1983 Will.

¶24 Laches could not, however, resolve Contestants' objections to probate of the 1997 Will. Before Harris initiated informal probate proceedings in 2013, Contestants were unaware of 1997 Will. After Harris sought the 1997 Will's probate, Contestants registered timely objections.

¶25 The application of laches to probate of the 1983 Will does not resolve this case. Even if Contestants are barred from enforcing the 1983 Will, a successful challenge to the 1997 Will on the grounds of undue influence or lack of capacity would result in a declaration of intestacy. Under such a declaration, Contestants likely would be entitled to a share in the mineral interests because they are not Harris's descendents. *See* §§ 72-2-112, -113, MCA.

¶26 We thus proceed to examine whether the District Court correctly determined that Contestants failed to raise a genuine issue of material fact with respect to their undue influence and testamentary capacity claims. The party contesting a will on the ground of undue influence "must present specific acts showing that undue influence actually was exercised upon the mind of the testator directly to procure the execution of the will." *In re Estate of Mead*, 2014 MT 264, ¶ 27, 376 Mont. 386, 336 P.3d 362 (internal quotation marks and citation omitted). "Mere suspicion" or "[g]eneral allegations of poor health are not sufficient to show undue influence." *Mead*, ¶¶ 29, 31 (citation omitted). Contestants submitted affidavits that demonstrated the opportunity for undue influence. These affidavits, however, do not show specific acts of undue influence sufficient to establish a triable dispute on that claim.

12

¶27 Contestants' proof of lack of testamentary capacity presents a closer question, but still is not sufficient to withstand summary judgment. A testator is competent to execute a will if he or she is "aware of: (1) the nature of the act to be performed; (2) the nature and extent of the property to be disposed of; and (3) the objects of his or her bounty." *In re Estate of Harms*, 2006 MT 320, ¶ 14, 355 Mont. 66, 149 P.3d 557. After a will proponent gives prima facie proof of due execution, the burden is on a will contestant to show lack of testamentary capacity. *Harms*, ¶ 15.

¶28 Here, Harris met his initial burden by submitting affidavits from two legal assistants who observed Dorothea sign the 1997 Will at the office of Dorothea's attorney, and who signed the will as witnesses. Both witnesses attested that they would not have signed the 1997 Will if they had any question about Dorothea's testamentary capacity.

¶29 Contestants countered with affidavits from two of Dorothea's children stating that Dorothea was under "mental stress" and "not in a good frame of mind" in 1997. These allegations do not show that Dorothea did not understand the natures of her act, property, or relations when the 1997 Will was executed. Elaine Thompson's affidavit does state that the 1997 Will referred to Thompson by her name from a previous marriage, but that was the name used in Dorothea's 1983 Will. The Thompson affidavit also points out that the 1997 Will mistakenly refers to Tamra Sue Patzer as Harris's "child by a previous marriage," when Patzer is actually Harris's child by a previous relationship, not a marriage. Thompson alleges that this was "not a mistake my mother would have made if she was of sound mind." "A suspicion, regardless of how particularized it might be, is

13

not sufficient to sustain an action or defeat a motion for summary judgment." *Abraham v. Nelson*, 2002 MT 94, ¶ 22, 309 Mont. 366, 46 P.3d 628. Once a party moving for summary judgment meets its initial burden, the party opposing summary judgment must present "material and substantial evidence" that raises a genuine issue of material fact. *MacKay v. State*, 2003 MT 274, ¶ 14, 317 Mont. 467, 79 P.3d 236. Material facts are identified by looking at the substantive law governing a claim. *McGinnis v. Hand*, 1999 MT 9, ¶ 6, 293 Mont. 72, 972 P.2d 1126. Contestants' affidavits do not present substantial evidence material to their contention that Dorothea was not cognizant of her property, relations, and testamentary act when she signed the 1997 Will. We agree with the District Court that the affidavits do not present a triable issue on testamentary capacity.

## CONCLUSION

¶30 We affirm the District Court's order permitting probate of Dorothea's estate and granting summary judgment to Harris on Contestants' objections. In light of Contestants' previous petition to prevent informal probate, we remand for formal testacy proceedings on the 1997 Will. *See* §§ 72-3-215(2), -302(1)-(2), MCA.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON