FILED

08/09/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0796

DA 15-0796

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 188

IN THE MATTER OF THE ESTATE OF:

PAUL L. KURTH,

       Deceased.

MARTY PURYER and SINDA PURYER,

       Petitioner, Counter-Defendant, and Appellants,

          vs.

BRUCE BARSTIS,

       Objector and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DP-13-043(A)<br>Honorable Amy Poehling Eddy, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

              Evan F. Danno, Esq., Danno Law Firm, P.C., Kalispell, Montana

       For Appellee:

              Matthew Hutchison, Kaufman, Vidal, Hileman, Ellingson, P.C., Kalispell, Montana

                          Submitted on Briefs: April 20, 2016
                                Decided: August 9, 2016

Filed:

                                Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     Paul L. Kurth died at the age of 82 on January 26, 2000, in a Missoula, Montana, hospital. Prior to his death, Kurth had resided with his niece and her husband, Sinda and Marty Puryer, in Kalispell for several years. On February 19, 1998, Marty hand wrote a document entitled "Instructions and Last Will and Testament of Paul L. Kurth." Marty claims Kurth dictated the contents of this document to him and then signed it in his presence, as well as in the presence of a long term caregiver. The Puryers did not petition to probate this will until March 8, 2013. The will was challenged by Bruce Barstis, Kurth's nephew. Following lengthy discovery and litigation, the Eleventh Judicial District Court, Flathead County, ruled that Kurth had died intestate. Puryers appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Paul Kurth never married nor had children. He was survived by three of his five siblings and nine nieces and nephews. For the last several years of his life, he lived with niece Sinda Puryer and her husband, Marty. According to Marty, approximately two years before Kurth's death, Kurth instructed him to take down his testamentary instructions leaving everything he owned to Sinda and Marty. Marty and Sinda assert that Kurth signed the handwritten holographic statement and intended it to be his last will and testament.

¶3     During many of the years Kurth lived with Sinda and Marty, Sinda's parents, Mike and Mary Mattovich (Mary was Kurth's sister) also lived with them. Mary died in October 1997 and Mike died in June 1998. Mike left Kurth $8,214, distributable after

2

Kurth's death. Following Kurth's death in 2000, Sinda hired an attorney in 2001 to administer Kurth's estate. The attorney collected the funds from the Mattovich estate and distributed them to Kurth's estate. The attorney collected the personal assets of Kurth's estate for distribution to the Puryers, pursuant to an affidavit signed by Sinda in which she attested that she was Kurth's heir under the terms of the holographic will and had received these distributions. Thereafter, the Puryers did not probate Kurth's will. Subsequently, Sinda and her sister and co-representative of their father's estate signed statements closing the Mattovich Estate.

¶4 In addition to the personal property Kurth held upon his death, he also held a real property interest in mineral rights in eastern Montana. The attorney hired by Sinda did not pursue probate or effect the transfer of these real property interests to Puryers.

¶5 In February 2013, an oil and gas company wanting to lease minerals in Roosevelt and Sheridan Counties contacted Bruce Barstis, one of Kurth's nephews. Barstis retained an attorney and notified all of Kurth's heirs that Kurth's estate needed to be probated to effect transfer of Kurth's real property interests. Barstis offered to act as the estate's personal representative. In response to the notice, on March 8, 2013, Marty filed a Petition for Formal Probate of Will, and Appointment of Personal Representative. Claiming that under § 72-3-122(1)(e), MCA, the time for probating the will had not expired, Marty attached Kurth's holographic will to the Petition and asserted that the requested probate was "to establish an instrument to direct or control the ownership of property distributable after decedent's death, pursuant to the decedent's Will."

3

¶6 Barstis challenged the alleged will on multiple grounds, including that the time for probate had passed and no exceptions to the time limitations applied. Discovery and litigation ensued and in April 2015, Barstis moved for partial summary judgment expressly arguing that Marty had waited too long to seek probate of the alleged will and the exceptions set forth in § 72-3-122(1)(d) and (e), MCA, did not apply. Barstis therefore maintained that as a matter of law, Kurth died intestate.

¶7 On November 24, 2015, the District Court granted Barstis's motion for partial summary judgment. The court's dispositive ruling in this case determined that § 72-3-122(1), MCA, barred probate of Kurth's alleged will. Section 72-3-122(1), MCA, requires that probate of a will, with some exceptions, must take place within 3 years after the decedent's death. The court analyzed the two potentially applicable exceptions set forth in § 72-3-122(1)(d) and (e), MCA, and ruled that neither exception applied. Having so concluded, the District Court held that Kurth died intestate and the Estate must proceed under Montana's intestacy statutes. The District Court awarded costs to Barstis.

¶8 Puryers appeal.

**ISSUES**

¶9 A restatement of the dispositive issues on appeal is:

¶10 Did the District Court err in granting Bruce Barstis's motion for summary judgment on intestacy?

¶11 Did the District Court err by awarding litigation costs to Barstis following summary judgment on intestacy?

4

**STANDARDS OF REVIEW**

¶12 The interpretation of a statute is a question of law which we review de novo for correctness. *Kulko v. Davail, Inc.*, 2015 MT 340, ¶ 9, 381 Mont. 511, 363 P.3d 430. *See also In re Estate of Harris*, 2015 MT 182, ¶ 9, 379 Mont. 474, 352 P.3d 20.

¶13 We review a district court's summary judgment ruling de novo, applying the same rule, M. R. Civ. P. 56(c)(3), that a district court does when making a summary judgment ruling. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Victory Ins. Co. v. Mont. State Fund*, 2015 MT 82, ¶ 10, 378 Mont. 388, 344 P.3d 977 (citations omitted).

¶14 We review a district court's ruling on a motion for leave to amend for an abuse of discretion. *Seamster v. Musselshell Cnty Sheriff's Office*, 2014 MT 84, ¶ 6, 374 Mont. 358, 321 P.3d 829 (citation omitted).

¶15 We review for correctness a district court's conclusion regarding the existence of legal authority to award attorney fees. If legal authority exists, we review a district court's order granting or denying attorney fees for abuse of discretion. *Mont. Immigrant Justice Alliance v. Bullock*, 2016 MT 104, ¶ 15, 383 Mont. 318, 371 P.3d 430.

**DISCUSSION**

¶16    *Did the District Court err in granting Bruce Barstis's motion for summary judgment on intestacy?*

¶17    Puryers present multiple arguments to support their claim that Kurth's will is legitimate, valid, and capable of being probated thirteen years after Kurth's death. We address their claim that the statutory exceptions to the 3-year time bar set forth in § 72-3-122(1), MCA, are applicable.

¶18    Section 72-3-122(1)(d) and (e), MCA, provide:

> (1) No informal probate or appointment proceeding or formal testacy or appointment proceeding . . . may be commenced more than 3 years after the decedent's death, except:
>
> .    .    .
>
> (d)  an informal appointment or a formal testacy or appointment proceeding may be commenced after the time period if no proceedings concerning the succession or estate administration have occurred within the 3-year period after the decedent's death, but the personal representative has no right to possess estate assets provided in 72-3-606 beyond that necessary to confirm title to the property in the successors to the estate, and claims other than expenses of administration may not be presented against the estate; and
> (e)  a formal testacy proceeding may be commenced at any time after 3 years from the decedent's death for the purpose of establishing an instrument to direct or control the ownership of property passing or distributable after the decedent's death from one other than the decedent when the property is to be appointed by the terms of the decedent's will or is to pass or be distributed as a part of the decedent's estate or its transfer is otherwise to be controlled by the terms of the decedent's will.

¶19    In Marty's petition to probate Kurth's will filed in March 2013, he claimed that probate was not time-barred because § 72-3-122(1)(e), MCA, applied and extended the time allowed for seeking probate. Significantly, Marty did not refer to or rely upon § 72-3-122(1)(d), MCA. Barstis objected to the proposed probate and to the appointment

of Marty as personal representative. The District Court set a December 25, 2013 deadline for amending pleadings or joining additional parties.

¶20   On February 3, 2014, Barstis moved to amend his objection. Claiming newly discovered evidence revealed in Marty's January 16, 2014 deposition, Barstis sought to add Sinda as a party and to present new counterclaims against both Marty and Sinda. On April 29, 2014, the District Court granted Barstis's motion to amend over Puryers' objection. Following further proceedings, Puryers filed their answer to Barstis's counterclaims on January 12, 2015, asserting for the first time that the time for formal probate had not expired under the provisions of § 72-3-122(1)(d), MCA.

¶21   In April 2015, Puryers moved for leave to amend their petition to add § 72-3-122(1)(d), MCA, as a defense. Shortly thereafter, Barstis moved for partial summary judgment arguing Kurth had died intestate. On June 5, 2015, the District Court denied Puryers' motion to amend their petition noting that Puryers were seeking to change the legal theory upon which their original petition—filed two years earlier—had been based. The court reasoned that the motion was untimely under the deadlines set in the scheduling order and that the Puryers failed to show good cause justifying the amendment. The District Court noted that the couple did not claim newly discovered evidence nor did they assert that the defense available under § 72-3-122(1)(d), MCA, was neither known nor available to them at the time Marty filed his original petition in March 2013 or prior to the December 25, 2013 deadline for amending pleadings. The court disagreed with the Puryers' assertion that their original petition was based upon

7

§ 72-3-122(1)(d), MCA, by pointing out several record-based examples that refuted such a claim. Lastly, the District Court ruled that Barstis would be unduly prejudiced by the Puryers' proposed amendment. Even though the District Court denied Puryers' motion to amend the probate petition, it nonetheless addressed the applicability of § 72-3-122(1)(d), MCA, to the case at bar and determined that the statute did not provide the Puryers with an exception to the 3-year filing deadline. Thereafter, it granted Barstis's motion for summary judgment.

¶22 Puryers argue on appeal that the District Court erred in refusing to allow them to amend their petition, given that the court had allowed Barstis to amend his objection to their petition for probate. They maintain that had the court ruled correctly on these motions, genuine issues of fact would have precluded summary judgment in favor of Barstis.

¶23 It is well established that a "court should freely give leave [to amend] when justice so requires." M. R. Civ. P. 15(a)(2). "Although district courts have discretion in granting leave to amend, we have held that Rule 15(a) 'favors allowing amendments.'" *Seamster*, ¶ 14. Further, "[w]e have articulated circumstances justifying a court's denial of a motion to amend. Such situations include when the denial is 'for an apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc.'" *Seamster*, ¶ 14 (internal citations omitted).

¶24 In reviewing Barstis's motion for leave to amend, the District Court analyzed the foregoing factors and found no evidence of bad faith, intentional delay, improper purpose, or prejudice. Given that the newly discovered evidence upon which Barstis based his motion to amend had come to light in Marty's deposition taken two weeks earlier, the court concluded the motion to amend was timely and reasonable. Addressing futility, the District Court stated it was "satisfied that it cannot be said that Mr. Barstis will be unable to develop facts entitling him to the relief sought." We conclude the court did not abuse its discretion in granting Barstis's motion to amend.

¶25 Conversely, in denying the Puryers' motion to amend, the District Court set forth facts indicative of both undue delay and undue prejudice, as well as bad faith or a dilatory motive. The court found that Puryers sought to amend their petition in order to assert a defense that was available at the time Marty filed his original petition. The court noted that Marty could have asserted the applicability of § 72-3-122(1)(d), MCA, at any time between March 8, 2013, and the scheduling order deadline for pleading amendments of December 25, 2013, but failed to do so. The court noted that Puryers' petition for probate of the Kurth will was not filed until thirteen years after his death, and yet more than two years later, Puryers continued to allege inconsistent facts and shift theories in an effort to secure title to the property at issue. Finally, it concluded that because Barstis had conducted discovery for over two years premised upon § 72-3-122(1)(e), MCA, he would be unduly prejudiced by such a late change in legal theories. We find the District Court's analysis reasonable, and conclude it did not abuse its discretion in denying

9

Puryers' motion to amend their petition. Therefore, we decline to consider § 72-3-122(1)(d), MCA, as grounds for tolling the 3-year statute of limitations period for the probate of the Kurth will.

¶26 Puryers also argue on appeal that the District Court erred in declining to apply the exception contained in § 72-3-122(1)(e), MCA, so as to allow late probate of the will. They argued in the District Court that this exception was available to them because Sinda testified in her deposition that the $8,214 left to the Kurth estate by the Mattovich estate still remained to be distributed to the Kurth estate. The District Court acknowledged that this exception would allow late probate of the Kurth estate had such distribution not taken place. However, the court noted that Sinda had filed a sworn statement to close the Mattovich estate in 2001, stating therein that she had received this distribution, and further that Puryers had not pursued recovery of these funds for the ensuing thirteen years. The court concluded that Puryers had failed to establish that genuine issues of material fact precluded summary judgment in favor of Barstis on the application of this statute, citing the multiple inconsistent positions taken by Puryers.

¶27 We have previously cautioned that parties cannot create a material factual issue by taking a contrary position to an earlier position. In *Stott v. Fox*, 246 Mont. 301, 805 P.2d 1305 (1990), we instructed that Stott's contradiction between his deposition and his affidavit did not create a genuine issue of material fact. We stated:

> While the district courts must exercise extreme care not to take genuine issues of fact away from juries, '[a] party should not be allowed to create issues of credibility by contradicting his own earlier testimony.' Ambiguities and even conflicts in a deponent's testimony are generally

10

matters for the jury to sort out, but a district court may grant summary where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplementing previous depositions ad hoc with a new affidavit, and no case would ever be appropriate for summary judgment.

*Stott*, 246 Mont. at 309, 805 P.2d at 1309-10 (internal citations omitted).

¶28 Based upon the foregoing, we conclude that the District Court did not abuse its discretion in its disposition of the procedural petitions filed by the parties. We further conclude that the District Court did not err in concluding that because neither of the statutory exceptions set forth in § 72-3-122, MCA, applied, Barstis was entitled to summary judgment on his contention that the estate must proceed under Montana's intestacy statutes.

¶29 *Did the District Court err by awarding litigation costs to Barstis following summary judgment on intestacy?*

¶30 Section 72-12-206, MCA, expressly provides:

When the validity or probate of a will is contested through court action, the attorney fees and costs, as provided in 25-10-201, incurred in defending the validity or probate of the will must be paid by the party contesting the validity or probate of the will if the will in probate is confirmed. If the probate is revoked, costs, as provided in 25-10-201, but not attorney fees, must be paid by the party who resisted the revocation or out of the property of the decedent, as the court directs.

¶31 The District Court correctly interpreted and applied this statute. We affirm the court's award of costs.

## CONCLUSION

¶32    For the foregoing reasons, we affirm the District Court's conclusion that Kurth died intestate and that Kurth's estate must be distributed in accordance with Montana's intestacy statutes.  We further affirm the court's statutory award of costs.


                                                    /S/ PATRICIA COTTER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE