FILED

12/05/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0156

DA 23-0156

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 234

IN THE MATTER OF THE ESTATE OF
RONALD GLEN KEMMER,

     Deceased.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DP-19-197
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Ben Sather, MurphyMyers, PLLC, Billings, Montana

     For Appellant Travis Kemmer Individually:

          Adam J. Tunning, Moulton Bellingham, P.C., Billings, Montana

     For Appellant Travis Kemmer, as Personal Representative of the Estate of
Ronald Glen Kemmer:

          Justin D. Hoskins, Leonard H. Smith, Crowley Fleck, PLLP, Billings,
Montana

     For Appellees:

          T. Thomas Singer, Hall & Evans, LLC, Billings, Montana

          Brent Brooks, Axilon Law, Billings, Montana

     For Amicus State Bar of Montana:

          Justin M. Bryan, Bryan Law Firm, PC, Bozeman, Montana

          Drew Moore, Gaertner, McLean, Younkin & Willett, PLLC,
Bozeman, Montana

Molly S. Considine, Patten, Peterman, Bekkedahl & Green, PLLC, Billings, Montana

Submitted on Briefs:  October 4, 2023

Decided:  December 5, 2023

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 The surviving adult children of decedent Ronald Glen Kemmer—Travis, Becky, Collette, and Ronda—dispute the distribution of a 1978 Ford pickup truck and whether Travis, the Personal Representative (PR) of the Estate of Ronald Glen Kemmer (Estate), breached his fiduciary duties by failing to draft a written agreement memorializing the heirs' alleged resolution of the truck's disposition. Becky appeals the findings of fact, conclusions of law, and order of the Thirteenth Judicial District Court, Yellowstone County, awarding the truck to Collette. Restated, the issues on appeal are:

1. Whether the Heirs reached a binding agreement on distribution of the truck.

2. Whether § 72-3-915(1), MCA, imposed a fiduciary duty on the PR to memorialize in writing the Heirs' purported verbal agreement regarding the truck.

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Ronald Glen Kemmer died intestate on May 20, 2019. He was survived by his four adult children: Travis Kemmer, Becky Mastley, Collette Cole, and Ronda Gilge (Heirs). Travis was appointed PR of the Estate.

¶3 Travis, Becky, and Collette gathered at their father's home in August 2019 to review his personal property. Becky testified that the PR kept a printout of a spreadsheet in the kitchen for everyone to note who may have an interest in certain items. Evidence shows there was considerable discussion about a 1978 Ford pickup truck, to which several Heirs had sentimental attachment. Ronda and Collette testified that at the August 2019 gathering

3

¶4    there was an offer from the PR to Collette to purchase the truck for $10,000, which would be deducted from her share of the estate. The Heirs dispute whether they reached agreement about the disposition of the truck. They submitted various e-mail and text messages between them to support their respective positions. All agree, however, that no written agreement for Collette to purchase the truck for $10,000 was made or signed at the August 2019 gathering.

¶5    When the disposition of the truck had not been resolved, the PR held an auction among the Heirs. Collette and Becky both bid on the truck; Collette submitted the highest bid of $21,120. Because Collette then failed to timely respond to the PR on the potential distribution, however, the PR distributed the truck to Becky for the second highest bid amount of $21,000. After Becky made payment, the PR made final distribution of the truck to Becky and filed a verified petition to close the Estate.

¶6    Collette and Ronda petitioned the District Court to remove Travis as the personal representative and to void the PR's distribution of the truck to Becky. The court held a two-day hearing after mediation failed. The District Court made the following pertinent findings:

> 4. The Court finds by a preponderance of the evidence that Travis, as PR, breached his fiduciary duty to Collette by failing to honor the agreement made between Travis and all of the heirs on August 10, 2019 that Collette would receive the 1978 Ford pickup for $10,000.00 to be paid from Collette's share of the Estate.
>
> 5. The Court does not find credible Travis' testimony that no agreement was ever reached in August 2019 between the PR and heirs that Collette was to receive the 1978 Ford pickup for $10,000.00. The Court further finds that, as PR, Travis was obligated to promptly draft a formal written agreement to

4

distribute the pickup to Collette if he thought a written agreement was necessary. It is undisputed that the PR permitted many other items of Estate property to be distributed to heirs by verbal agreement without requiring written distribution agreements.

6. The Court finds that the PR's distribution of the 1978 Ford pickup to Becky was improper and a breach of the PR's fiduciary duty owed to Collette.

7. The Court finds that the agreement between the PR and heirs that Collette was to receive the 1978 Ford pickup was a valid, binding agreement that should be enforced.

8. The Court finds, however, that the PR's improper distribution of the 1978 Ford pickup to Becky does not constitute sufficient cause to remove Travis as PR. The Court further finds that removing Travis as PR would cause unnecessary delay and expense and would not serve the best interests of the Estate. The Court can address and, if necessary, remedy any other improper distributions or expenses before closing the Estate.

Without further analysis of or citation to legal authority, the court concluded that the August 10, 2019 agreement was valid and retained Travis as the PR. Both Becky and the PR appeal the District Court's order awarding the truck to Collette. Travis additionally submitted a brief in his individual capacity. The Business, Estates, Tax, Trust, and Real Property (BETTR) Section of the Montana State Bar also submitted a brief as *amicus curiae*.

## STANDARD OF REVIEW

¶7     We review a district court's interpretation of a statute de novo. *In re Estate of Harris*, 2015 MT 182, ¶ 9, 379 Mont. 474, 352 P.3d 20 (citation omitted).

## DISCUSSION

*1. Whether the Heirs reached a binding agreement on distribution of the truck.*

5

¶8 Montana has enacted the Uniform Probate Code (UPC) as chapters 1-5 and chapter 16, part 6, of Title 72, MCA. Section 72-1-101(1), MCA. Montana's UPC (MUPC) governs the rights of heirs and devisees to a decedent's property and is designed "to facilitate the prompt settlement of estates." Section 72-3-101(1), MCA. All parties agree that the MUPC controls. Section 72-3-915(1), MCA, provides that:

> Subject to the rights of creditors and taxing authorities, competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent or under the laws of intestacy in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement subject to the obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of the personal representative's office for the benefit of any successors of the decedent who are not parties.

The code defines "successors" as "persons, other than creditors, who are entitled to property of a decedent under the decedent's will or chapters 1 through 5." Section 72-1-103(50), MCA. Under the MUPC, the Heirs are successors of Ronald Glen Kemmer.

¶9 Collette contends an agreement was reached in August 2019 whereby she would receive the truck for $10,000 to be paid from her share of the intestate estate. Although Collette acknowledges that no written agreement was made at the August 2019 gathering, she asserts this agreement was confirmed in a series of e-mails or texts written separately by each of the Heirs. Under the Uniform Electronic Transactions Act (UETA) found in Title 30, chapter 18, part 1, MCA, Collette maintains that these electronic communications together satisfy the "written contract" requirement of § 72-3-915(1), MCA.

6

¶10    Becky and Travis contend that there was no agreement reached among the Heirs with respect to the truck. Becky and Travis further assert that, even assuming an agreement was reached, it was not reduced to a writing as required by the MUPC.

¶11    "When interpreting a statute, we seek to implement the objectives the legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls." *In re Conservatorship of Kloss*, 2005 MT 39, ¶ 10, 326 Mont. 117, 109 P.3d 205 (citation omitted). We construe a statute according to its plain meaning; "if the language is clear and unambiguous then no further interpretation is required." *In re Estate of Engellant*, 2017 MT 100, ¶ 11, 387 Mont. 313, 400 P.3d 218.

¶12    The plain language of § 72-3-915(1), MCA, requires that an agreement among successors to alter the amounts to which they are entitled under the laws of intestacy must be provided "in a written contract executed by all who are affected by its provisions." This Court has affirmed that "[d]istribution agreements are required, pursuant to § 72-3-915(1), MCA, to be in writing." *In re Estate of Goick*, 909 P.2d 1165, 1171, 275 Mont. 13, 23 (1996) (*overruled on other grounds by Lockhead v. Weinstein*, 2003 MT 360, ¶ 22, 319 Mont. 62, 81 P.3d 1284).

¶13    In *Kluver v. PPL Mont., LLC*, we considered whether the UETA applied to an unsigned Memorandum of Understanding (MOU) transmitted via e-mail from an attorney after the conclusion of a mediation. 2012 MT 321, ¶¶ 20-24, 368 Mont. 101, 293 P.3d 817. We recognized that the UETA applies to transactions between parties who have agreed to transact by electronic means as determined by the context and surrounding circumstances,

7

including the parties' conduct. *Kluver*, ¶ 23 (citing § 30-18-104(2), MCA). It was clear from the explicit language of the MOU that the *Kluver* parties agreed to memorialize the terms of their settlement by electronic means; the MOU stated that the parties reviewed and approved it; the parties also made statements after the mediation acknowledging that a settlement had been reached. *Kluver*, ¶ 24.

¶14     The laws of intestacy dictate that when a decedent dies intestate without a surviving spouse, the estate passes to the decedent's descendants by representation. Section 72-2-113(1)(a), MCA. A decedent's property is divided into as many equal shares as there are surviving descendants in the generation nearest to the decedent that contains one or more surviving descendants. Section 72-2-116(2)(a)(i), MCA. Were the truck to pass under the laws of intestacy, each of the Heirs would receive equal shares of the proceeds from its sale. To allow the disposition of specific items of property without requiring sale, successors may control the disposition contrary to what intestate succession laws would dictate. That contrary intent, however, must be clear and reduced to agreement so the personal representative properly may administer the estate in conjunction with their statutory obligations. *See* § 72-3-915(1), MCA. Whether such an agreement could be manifested by electronic documents, it requires more than a series of informal conversations that happen to occur by electronic means. UETA applies where parties have agreed to transact by electronic means. Section 30-18-104(2), MCA. It does not supplant the MUPC's express requirement that there be a written contract. At most, UETA may allow that such a contract could be memorialized and executed electronically.

8

¶15   The District Court did not find that the Heirs' e-mails or texts satisfied the requirement of a written contract. It found the agreement to have been made on August 10, 2019—the date that three of the four Heirs gathered at their father's home. Verbal agreement—even if there was one—is not adequate to satisfy § 72-3-915(1), MCA. An "agreement" purportedly evidenced by myriad exchanges of texts and e-mails between various Heirs is insufficient to demonstrate a "written contract" executed by each of them as § 72-3-915(1), MCA, requires. Because the alleged agreement was not reduced to a writing to which each of the Heirs subscribed, the District Court incorrectly applied § 72-3-915(1), MCA, in concluding that the PR must distribute the truck to Collette based on that unwritten "agreement."

> *2. Whether § 72-3-915(1), MCA, imposed a fiduciary duty on the PR to memorialize in writing the Heirs' purported verbal agreement regarding the truck.*

¶16   Becky takes issue with the District Court's finding that the PR "was obligated to promptly draft a formal written agreement to distribute the pickup to Collette if he thought a written agreement was necessary." Becky asserts that a plain reading of § 72-3-915(1), MCA, places the duty to reduce an agreement to writing on the "successors" of the estate, rather than on the personal representative. Collette responds that under § 72-3-610, MCA, the PR failed to observe the applicable standard of care of a fiduciary, and therefore the District Court correctly concluded that the PR had a duty to prepare a written agreement.

¶17   The personal representative has a fiduciary duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and the MUPC. Section 72-3-610, MCA. The applicable provision of the MUPC states that the

9

personal representative "shall abide by the terms of the agreement" that "[successors] provide in a written contract executed by all who are affected by its provisions." Section 72-3-915(1), MCA. The personal representative's fulfillment of the successors' wishes is subject to the personal representative's other obligations and responsibilities. Section 72-3-915(1), MCA.

¶18 We rely on the Official Comments accompanying the UPC when interpreting Montana statutes that are based on the UPC. *See In re Estate of Lettengarver*, 249 Mont. 92, 99, 813 P.2d 468, 473 (1991) (citing the Official Comments in the Court's analysis of the augmented estate); *see also In re Estate of Spencer*, 2002 MT 304, ¶ 15, 313 Mont. 40, 59 P.3d 1160 (citing the Official Comments as authority for the UPC's flexibility in appointment proceedings).

¶19 Although the Uniform Laws Commission said this section of the UPC "is only a restatement of the obvious and should be omitted," it was included "to make it clear that the successors to an estate have residual control over the way it is to be distributed." Section 72-3-915, MCA, *Annotations*, Official Comments (2021). "Hence, [the successors to an estate] may compel a personal representative to administer and distribute [the estate] as they may agree and direct." Section 72-3-915, MCA, *Annotations*, Official Comments (2021).

¶20 The explicit language of § 72-3-915(1), MCA, and the Official Comments make clear that the successors may compel the personal representative to administer and distribute the estate as the successors direct in a written contract. The personal

representative is required to "abide by the terms of the agreement subject to the obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of the personal representative's office for the benefit of any successors of the decedent who are not parties." Section 72-3-915(1), MCA. The personal representative is not required to piece together e-mails and texts to determine whether there was a meeting of the minds among successors, nor to take responsibility for putting any such agreement in writing. We therefore hold that the PR owed no duty to prepare a written contract. To conclude otherwise would divest successors of their residual control over the administration of an estate and authority over the personal representative. The District Court thus erred in its interpretation of § 72-3-915(1), MCA, by concluding that the PR had a duty to do so.

## CONCLUSION

¶21 We reverse the District Court's order. There was no written contract pursuant to § 72-3-915(1), MCA, and the PR had no duty to prepare one. We remand to the District Court for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

11